**In re L & M FABRICATORS, f/k/a L & M Industries, Debtor.**

**L & M FABRICATORS, f/k/a L & M Industries, Plaintiff,**

v.

**PABCOR, INC.; and Grant Industrial Supply, Defendants.**

**Bankruptcy No. 87–2195.**
**Adv. No. 89–0373.**

United States Bankruptcy Court,
W.D. Pennsylvania.

May 9, 1990.

James A. Lewis, Michael H. Syme, Rothman, Gordon, Foreman & Groudine, P.C., Pittsburgh, Pa., for debtor/plaintiff.

Daniel I. Herman, Geer and Herman, New Castle, Pa., for defendants.

Office of U.S. Trustee, Pittsburgh, Pa.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is Debtor/Plaintiff's ("L & M") Complaint to recover alleged accounts receivable. L & M claims that it fabricated and delivered to Defendants Pabcor, Inc. and Grant Industrial Supply,

various steel products which they had ordered. According to L & M, Defendants accepted the products and have refused its demands to pay the amounts due and owing for those products.

Defendants have counterclaimed against L & M, alleging that the U-bolts which L & M fabricated pursuant to two purchase orders issued by Pabcor had been seasonably rejected as not conforming to specifications. Defendants further maintain that they are entitled to set off damages sustained as a result of L & M's failure to provide conforming goods against amounts due and owing to L & M on other purchase orders.

In accordance with the analysis set forth below, judgment will be entered in favor of L & M and against Defendants Pabcor and Grant Industrial Supply in the amounts of $8,530.50 and $2,046.08, respectively.

## JURISDICTION and VENUE

Jurisdiction over this action is conferred upon this Court by 28 U.S.C. § 1334 and 28 U.S.C. § 157, as this action is a proceeding arising in or related to the case under Title 11 of the Bankruptcy Code, which proceedings are presently pending at Bankruptcy No. 87–2195.

Venue is proper in this judicial district under 28 U.S.C. § 1409.

## FACTS

The following facts are not in dispute. L & M is in the business of fabricating steel products. Dale Paglia was president of L & M at all relevant times. L & M filed a Chapter 11 petition on August 17, 1987.

On October 20, 1988, Pabcor issued Purchase Order No. 170, in which it requested that L & M fabricate 1,200 U-bolts "as per print XM40". The purchase order specified that "tooling will be supplied by PABCOR, INC". On March 7, 1989, L & M issued an invoice requesting payment for the bolts in the amount of $4,020.00. That same day, Pabcor shipped the bolts to P & L Heat Treating & Grinding, Inc. to be heat treated.

On October 21, 1988, Pabcor issued Purchase Order No. 171, in which it requested that L & M fabricate 2,500 U-bolts "as per print VS93". The bolts were shipped by Pabcor to Modern Industries, Inc. for heat treatment on March 2, 1989. L & M issued an invoice requesting payment for the bolts in the amount of $8,375.00 prior to February 27, 1989.

Also on October 21, 1988, Pabcor issued Purchase Order No. 192, in which it requested that L & M fabricate 204 brushguards. L & M fabricated and delivered the goods and, on February 21, 1989, issued an invoice requesting payment in the amount of $4,080.00.

On February 13, 1989, Pabcor issued Purchase Order No. 202, in which it requested that L & M fabricate 2,050.00 shield plates. L & M fabricated and delivered the goods and, on March 7, 1989, issued an invoice requesting payment in the amount of $430.50.

On February 27, 1989, Defendant Grant Industrial Supply issued Purchase Order No. 16923, in which it requested that L & M fabricate 30 breakout pins. L & M fabricated and delivered the goods and, on April 13, 1989, issued an invoice requesting payment in the amount of $862.32.

On March 28, 1989, Grant Industrial Supply issued Purchase Order No. 16926, in which it requested that L & M fabricate 150 stopper rods. L & M fabricated and delivered the goods, and, on April 13, 1989, issued an invoice requesting payment in the amount of $200.00.

On April 4, 1989, Grant Industrial Supply issued Purchase Order No. 16931, in which it requested that L & M fabricate miscellaneous parts for stopper rod assemblies. L & M fabricated and delivered the goods and, on April 5, 1989, issued an invoice requesting payment in the amount of $983.76.

With the exception of the invoice issued by L & M in connection with Purchase Order No. 171, Defendants have refused to pay the amounts requested by L & M.

## ANALYSIS

Defendants do not deny that they have refused to pay the amounts owing on the

above-described orders. Moreover, with the exception of the U-bolts fabricated pursuant to Purchase Order Nos. 170 and 171, they do not deny that they accepted the products fabricated by L & M. Rather, Defendants maintain only that the U-bolts fabricated pursuant to Purchase Order Nos. 170 and 171 were seasonably rejected as nonconforming and that they are entitled to set off the damages resulting from their nonconformity against the amounts due and owing on the remaining purchase orders.

Defendants' version of events goes as follows. Pabcor took delivery of the U-bolts in question on March 7, 1989. They were inspected and rejected on March 8, 1989. On March 9, 1989, Dale Paglia acknowledged Pabcor's rejection and was given quality control reports which stated that the U-bolts had failed to pass inspection. Paglia indicated at that time that L & M would attempt to cure the alleged defects, whereupon employees of L & M used Pabcor's facility in an attempt to make the bolts conform to specifications. The U-bolts were reinspected and rejected once again as nonconforming. Paglia then acknowledged that they still did not conform and agreed that Pabcor should have the bolts heat treated, at L & M's expense, after which L & M would attempt yet again to make the bolts conform. After Pabcor went to the expense of heat treating the bolts, L & M refused to attempt another cure and refused to remove them from Pabcor's storage area.

In addition to the above, Defendants contend that L & M agreed that it would reimburse Pabcor for its costs in making the die to be used in connection with Purchase Order No. 170. Defendants seek to recover Pabcor's costs. L & M denies that it agreed to pay for the die.

Rejection of goods must occur within a reasonable time after their delivery or tender. It is effective only if the buyer seasonably notifies the seller. *See* 13 Pa.C.S.A. § 2602(a) (Purdon's 1984). Rejection, even when the goods are nonconforming, requires affirmative action on the part of the buyer if it is to be effective. *See* Official Comment 1 to 13 Pa.C.S.A. § 2602.

Acceptance of goods may occur in several ways. The general rule on acceptance is as follows:

**General Rule.—Acceptance of goods occurs when the buyer:**

(1) after reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity;

(2) fails to make an effective rejection (section 2602(a)), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

(3) does any act inconsistent with the ownership of the seller; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

13 Pa.C.S.A. § 2606(a) (Purdon's 1984).

Under this last provision, acceptance occurs when the buyer either signifies acceptance to the seller after inspecting the goods or does an act inconsistent with the seller's ownership. *Pratt v. Winnebago Industries, Inc.,* 463 F.Supp. 709–714 (W.D.Pa.1979). When a buyer permits goods in its exclusive possession to be changed or altered, acceptance is deemed to have occurred pursuant to 13 Pa.C.S.A. § 2606(a)(3). *Marblelite Co. v. City of Phila.,* 208 Pa.Super. 256, 222 A.2d 443–445 (1966).

The following circumstances compel the conclusion that Pabcor had accepted the U-bolts fabricated pursuant to Purchase Order No. 171 which were shipped to Pabcor by L & M under Invoice # 88–2–175.

On February 27, 1989, Dominic Grant, a principal of Pabcor, sent a "Speed Message" concerning this shipment of U-bolts to Dale Paglia. The message reads in pertinent part as follows:

PLEASE MAIL REVISED INVOICE FOR <u>2214 U BOLTS</u>.
**Breakdown of U–Bolts.**

| | |
|---|---|
| 2214 | **Ready for Heat Treating** |
| <u>166</u> | **Rejected** |
| 2380 | |

**Original invoice # 88–2–175 dated 1/31/89.**
**Incorrect quanity (sic).**
**Any questions, call me.**

**Dom**

---

The apparent purpose of this message was two-fold. It was intended to notify L & M that: (1) only 2,380, and not 2,500, U-bolts had been received; and (2) of those which had been received, 166 had been rejected.

That same day—i.e., February 27, 1989 —L & M issued a credit memo in the amount of $556.10 to Pabcor for the 166 U-bolts it had rejected. Both the credit memo and the accounts receivable ledger card pertaining to Pabcor's account which L & M maintained reflect that Pabcor paid the remaining balance of $7,818.90 in full on March 10, 1989, approximately eight (8) days after Pabcor had sent the U-bolts to be heat treated.

The conclusion is inescapable that Pabcor had *accepted* the remaining 2,214 U-bolts it had received pursuant to Purchase Order No. 171.

Circumstances also indicate that Pabcor had accepted the U-bolts fabricated pursuant to Purchase Order No. 170.

On March 7, 1989, 1,200 U-bolts fabricated pursuant to Purchase Order No. 170 were delivered to Pabcor by L & M. Two (2) days later, on March 9, 1989, Pabcor shipped the bolts to P & L Heat Treating & Grinding for heat treatment.

Contrary to what Pabcor claims, it had *not* notified L & M of its rejection of the U-bolts prior to when it sent them out to be heat treated. L & M had not received a copy of the quality control report which states that the bolts had failed to conform to specifications.

In addition, Pabcor's contention that Dale Paglia had agreed to defray Pabcor's expense of having them heat treated as inducement for permitting him to attempt to cure the purported nonconformity *after*

they had been heat treated is implausible. Heat treating the bolts would have the effect of hardening and making it more, rather than less, difficult to bend them so as to conform to specifications. It flies in the face of reason that Paglia would have agreed to cure an alleged nonconformity *after* agreeing to pay for a procedure which would make it harder to effect a cure.

■ Pabcor, when it had the bolts heat treated, altered them. In so doing, it in effect accepted them pursuant to 13 Pa.C. S.A. § 2606(a)(3). *Marblelite Co. v. City of Phila., supra*, 222 A.2d at 445.

■ Finally, Pabcor spent $1,640.00 in labor and material to make the die used by L & M in connection with Purchase Order No. 171. The only remaining issue is whether Pabcor is entitled to recover these costs from L & M.

Pabcor's contention that L & M had agreed to pay these costs is unfounded. Purchase Order No. 170, which was drafted by Pabcor, does *not* state that L & M agreed to bear the cost of manufacturing the die. It states only that "tooling will be supplied by PABCOR, INC.". Based on the evidence presented, it must be concluded that L & M did *not* so agree. Rather, Pabcor agreed to provide the die, *at its own expense,* for the U-bolts in question.

The total amount due and owing from Pabcor on Purchase Order Nos. 170 ($4,020.00), 192 ($4.080.00), and 202 ($430.50) is $8,530.50. The total amount due and owing from Grant Industrial Supply on Purchase Order Nos. 16923 ($862.32), 16926 ($200.00), and 16931 ($983.76) is $2,046.08.

Defendants' counterclaim will be dismissed.

An appropriate Order will be issued.

## ORDER OF COURT

AND NOW at Pittsburgh this 9th day of May, 1990, in accordance with the foregoing Memorandum Opinion of this same day, it is hereby ORDERED, ADJUDGED and DECREED that judgment is entered in favor of Plaintiff/Debtor, and against Defendant Pabcor, Inc., in the amount of $8,530.50.

IT IS FURTHER ORDERED that judgment is entered in favor of Plaintiff/Debtor, and against Defendant Grant Industrial Supply in the amount of $2,046.08.

IT IS FURTHER ORDERED that Defendants' counterclaim be and is hereby DISMISSED.